1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHELLI JO ANN BABICK,                    No. 2:14-cv-1312-KJN

12                    Plaintiff,

13          v.                                 ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and

19   Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

20   Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that

21   the Commissioner erred by finding that plaintiff was not disabled from February 1, 2005,

22   plaintiff's alleged disability onset date, through the date of the final administrative decision.

23   (ECF No. 13.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for

24   summary judgment.  (ECF No. 14.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 15.)

25   ////

26

27   ───────────────────────────
     [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
     both parties voluntarily consented to proceed before a United States Magistrate Judge for all
28   purposes.  (ECF Nos. 7, 9.)

                                             1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

## I.      BACKGROUND

Plaintiff was born on October 8, 1965, has a high school education, and previously worked as a custodian.[2]  (Administrative Transcript ("AT") 17, 33-34.)  On August 1, 2011, plaintiff applied for DIB and SSI, alleging in both applications that she was unable to work as of February 1, 2005.  (AT 13, 170-85.)  On December 21, 2011, the Commissioner determined that plaintiff was not disabled.  (AT 13, 103-12.)  Upon plaintiff's request for reconsideration, the determination was affirmed on March 13, 2012.  (AT 13, 114-23.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on December 7, 2012, and at which plaintiff (represented by counsel) and a Vocational Expert ("VE") testified.  (AT 13, 27-66.)

In a decision dated January 25, 2013, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from February 1, 2005, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 13-21.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 31, 2013.  (AT 2-7.)  Thereafter, plaintiff filed this action in federal district court on May 29, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

## II.     ISSUES PRESENTED

Plaintiff raises the following issues:  (1) whether the ALJ erred in evaluating the opinions of plaintiff's examining physicians when determining plaintiff's residual functional capacity with respect to their opinions on plaintiff's tolerance for exposure to noise; (2) whether the ALJ made an improper credibility determination with respect to plaintiff's testimony; and (3) whether the ALJ improperly discounted the third party testimony given by plaintiff's father.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.    DISCUSSION

A.    Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  At the First Step, the ALJ concluded that plaintiff had

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past relevant work?  If so, the

3

not engaged in substantial gainful activity since February 1, 2005, plaintiff's alleged disability onset date.  (AT 15.)  At Step Two, the ALJ determined that plaintiff had the following severe impairments: "[h]earing loss and depression."  (Id. (citations omitted).)  However, at Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

Before proceeding to Step Four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  The claimant is limited to simple repetitive and routine tasks.  She must also avoid concentrated exposure to noise.  The claimant is precluded from working around hazards.  She is unable to perform work requiring her to climb ladders, ropes, or scaffolds, but she can occasionally climb ramps or stairs.  The claimant is precluded from performing work requiring her to operate a motor vehicle.

(AT 17.)

At Step Four, the ALJ found that plaintiff was unable to perform any past relevant work.  (AT 20.)  Finally, at Step Five, the ALJ determined, through the VE's testimony, that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, specifically, hand packer, cleaner, and laundry worker.  (AT 21, 61-62.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from February 1, 2005, through the date of the ALJ's decision.  (AT 21.)

---

claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1          B.        Plaintiff's Substantive Challenges to the Commissioner's Determinations

2                    1.        *The ALJ Properly Assessed the Opinions of the Two Examining Physicians*

3                              *with Regard to Their Determinations as to Plaintiff's Hearing Limitations*

4          First, plaintiff argues that the ALJ committed reversible error by failing to either

5  incorporate into his RFC determination or provide reasons for discounting the functional

6  limitation that plaintiff "avoid even moderate exposure" to noise opined by both of plaintiff's

7  examining physicians.  AT 80, 97.  While the ALJ stated that he "agree[d] with these opinions,"

8  the ALJ determined that plaintiff "must avoid concentrated exposure to noise," AT 17, which

9  plaintiff contends is less restrictive than the examining physicians' opinions that plaintiff "avoid

10  even moderate exposure" to noise, AT 80, 97.  Plaintiff asserts that the ALJ's failure to state why

11  he did not adopt this aspect of the examining physicians' opinions was error.  Plaintiff further

12  argues that this was reversible error because the VE testified in response to a hypothetical posed

13  by plaintiff's counsel at the administrative hearing that plaintiff would not be able to perform any

14  work given her other limitations if she were required to avoid exposure to noise at a level below

15  "moderate."  Therefore, plaintiff requests that the court reverse the ALJ's decision and remand

16  for payment of benefits.  For the reasons discussed below, plaintiff's argument is without merit.

17          The weight given to medical opinions depends in part on whether they are proffered by

18  treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

19  1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more

20  weight is given to the opinion of a treating professional, who has a greater opportunity to know

21  and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.

22  1996).

23          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

24  considering its source, the court considers whether (1) contradictory opinions are in the record;

25  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

26  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

27  F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

28  rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

1  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

2  examining professional's opinion (supported by different independent clinical findings), the ALJ

3  may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

4  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

5  weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th

6  Cir. 2001), except that the ALJ in any event need not give it any weight if it is conclusory and

7  supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)

8  (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881

9  F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient

10  to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

11        Here, as noted above, the ALJ stated in his decision that he "agree[d] with the[ ] opinions"

12  of both of plaintiff's examining physicians, even though these physicians opined that plaintiff

13  "avoid even moderate exposure" to noise, AT 80, 97, while the ALJ determined that plaintiff

14  "must avoid concentrated exposure to noise," AT 17.  Plaintiff argues that this difference in

15  language demonstrates that the ALJ rejected the noise limitation opined by the examining

16  physicians without providing any reasons as to why he disagreed with this aspect of their

17  opinions.  More specifically, plaintiff contends that the ALJ's determination that plaintiff needed

18  to avoid concentrated exposure was less restrictive than the physicians' opinions that plaintiff

19  needed to avoid moderate exposure.  However, a review of the record demonstrates that the

20  variance in phrasing between the noise limitation opined by the examining physicians and that

21  determined by the ALJ did not amount to a substantive difference as to plaintiff's noise

22  limitation.  Indeed, during the administrative hearing, the VE testified that he construed the ALJ's

23  determination that plaintiff avoid "concentrated" noise to be commensurate with a restriction

24  from "moderate" noise as defined by the Dictionary of Occupational Titles ("DOT").[4]  AT 62.  At

_____

[4] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational
25  Titles (4th ed. 1991), ("DOT") is routinely relied on by the Social Security Administration "in
26  determining the skill level of a claimant's past work, and in evaluating whether the claimant is
able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276
27  (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.   The DOT is
28  a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

1    no time during the hearing did the ALJ provide any indication that the VE's interpretation of the

2    restriction from concentrated noise was more restrictive than what the ALJ intended by that

3    limitation.  Given this silence at the hearing and the fact that the ALJ expressly stated in his

4    decision that he "agree[d] with the[ ] opinions" of both examining physicians, AT 17, the record

5    provides substantial evidence that the ALJ properly evaluated and adopted the opinions of the two

6    examining physicians, including their opinions that plaintiff avoid exposure to moderate noise.

7         Moreover, even had the ALJ intended his determination that plaintiff "must avoid

8    concentrated exposure to noise" to be less restrictive than that opined by plaintiff's examining

9    physicians and did not provide reasons for discounting this aspect of their opinions, such error

10   would have been harmless because the record shows that the VE's testimony that plaintiff could

11   still perform jobs that exist in significant numbers was based on the restriction from "moderate"

12   noise which the examining physicians opined.  As noted above, the VE testified at the hearing

13   that he considered the ALJ's hypothetical restriction from concentrated exposure to noise to be

14   equivalent to the DOT's definition of a restriction from moderate exposure to noise.  AT 62.

15   Based on this definition, the VE further testified that a person with such a limitation, in addition

16   to plaintiff's other limitations, could still perform work as a hand packer, cleaner, and laundry

17   worker.  AT 61-62.  Because the VE based his testimony on the understanding that the

18   hypothetical restriction was from moderate exposure to noise, the same restriction opined by the

19   examining physicians, the VE would have still testified that plaintiff could perform these jobs

20   even had the ALJ adopted the exact language used in the examining physicians' opinions to

21   describe plaintiff's noise restriction.

22        Plaintiff argues that the examining physicians' use of the word "even" to describe

23   plaintiff's noise limitation demonstrates that they believed it to be more restrictive than a simple

24   restriction from moderate exposure to noise.  This argument is meritless.  Contrary to plaintiff's

25   assertion, the term "even," as it was used in the examining physicians' opinions, indicates the

26   fullest extent of the restriction, meaning that these physicians determined that plaintiff was

27   restricted, at most, from moderate exposure.  Therefore, any error on the part of the ALJ with

28   regard to these physicians' opinions would have been harmless because the VE testimony that

1  plaintiff could still perform jobs that existed in significant numbers was based on the same

2  hearing limitation opined by the examining physicians.

3             2.    *The ALJ's Adverse Credibility Determination with Regard to Plaintiff's*

4                   *Testimony was Supported by Substantial Evidence*

5             Second, plaintiff argues that the ALJ erred in finding plaintiff's testimony not fully

6  credible because the ALJ failed to meaningfully evaluate the effect of plaintiff's tinnitus as a

7  separate impairment and her testimony that her hearing aids worsened her tinnitus.  Plaintiff

8  argues further that the ALJ did not properly discredit her testimony regarding the extent of her

9  other hearing and mental impairments.

10            In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of

11 Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

12                 To determine whether a claimant's testimony regarding subjective
                   pain or symptoms is credible, an ALJ must engage in a two-step
13                 analysis.  First, the ALJ must determine whether the claimant has
                   presented objective medical evidence of an underlying impairment
14                 which could reasonably be expected to produce the pain or other
                   symptoms alleged.  The claimant, however, need not show that her
15                 impairment could reasonably be expected to cause the severity of
                   the symptom she has alleged; she need only show that it could
16                 reasonably have caused some degree of the symptom.  Thus, the
                   ALJ may not reject subjective symptom testimony . . . simply
17                 because there is no showing that the impairment can reasonably
                   produce the degree of symptom alleged.
18
                   Second, if the claimant meets this first test, and there is no evidence
19                 of malingering, the ALJ can reject the claimant's testimony about
                   the severity of her symptoms only by offering specific, clear and
20                 convincing reasons for doing so. . . .

21

22 Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

23 ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

24 be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

25            "The ALJ must specifically identify what testimony is credible and what testimony

26 undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

27 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

28 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

1  "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

2  between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

3  testimony from physicians and third parties concerning the nature, severity, and effect of the

4  symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

5  2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

6  1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

7  court "may not engage in second-guessing."  Id. at 959.

8         Here, the ALJ gave the following reasons in support of his determination that plaintiff's

9  testimony concerning the intensity, persistence, and limiting effects of her impairments was not

10  entirely credible:

11         While the undersigned is sympathetic to difficulties the claimant may encounter
       with limited hearing ability, she was able to communicate effectively during the
12       hearing when accommodation was made for the speaker to be close to her. . . .  She
       had a long history of working, at times with employer accommodation, and quit
13       her last job for reasons not related to her impairment.  In a Disability Report the
       claimant stated that she stopped working February 1, 2005 because of her limited
14       hearing condition.  However, the claimant's testimony contradicted that statement
       as she stopped because of perceived unequal treatment by her employer.
15
16       There is very little medical evidence submitted that supports the severity, intensity,
       and frequency of the claimant's allegations.
17
18  (AT 18 (citations to the record omitted).)  As discussed below, these reasons were proper and

19  supported by substantial evidence from the record.

20         First, the ALJ observed that plaintiff was able to communicate effectively at the hearing

21  with accommodation.  AT 18.  An ALJ may "consider his or her own recorded observations of

22  the individual as part of the overall evaluation of the credibility of the individual's statements."

23  SSR 96-7p, 1996 WL 374186; see also Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

24  1989).  Therefore, the ALJ's observation that plaintiff's hearing impairment could be

25  accommodated properly supported his determination that that impairment was not so severe as to

26  preclude plaintiff from all work as plaintiff alleged.

27         The ALJ further determined that plaintiff's testimony as to the severity of her hearing

28  impairment was undermined because plaintiff had a long work history with accommodation and

9

1   testified that she quit her most recent job for reasons not directly related to her hearing

2   impairment.  AT 18.  This, too, was a valid reason for finding plaintiff less than fully credible, see

3   Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (holding that the ALJ's adverse credibility

4   determination was proper because "substantial evidence indicated that the condition of [plaintiff's

5   impairment] had remained constant for a number of years and that her [symptoms] had not

6   prevented her from working over that time"), and was supported by substantial evidence, see AT

7   34, 266.

8        The ALJ also determined that the plaintiff's statement in her disability report regarding

9   the reason she stopped working was contradicted by her hearing testimony on that topic.  Indeed,

10   plaintiff claimed in her disability statement that she left her most recent job due to her

11   impairments, AT 199, but testified at the hearing that she resigned because she "didn't like

12   working there."  AT 34.  The ALJ was permitted to rely on this inconsistency to support his

13   adverse credibility determination.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

14        Finally, the ALJ determined that the medical evidence in the record did not support

15   plaintiff's statements regarding the alleged severity of her limitations.  "[A]fter a claimant

16   produces objective medical evidence of an underlying impairment, an ALJ may not reject a

17   claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate

18   the alleged severity of pain."  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing

19   Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).   Although lack of medical evidence

20   cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is

21   nevertheless a relevant factor for the ALJ to consider.  Burch, 400 F.3d at 681.  Here, the ALJ

22   cited to a number of medical records, including the examining physicians' opinions that plaintiff

23   was restricted from moderate noise exposure, in support of this determination.  AT 18-19.  This

24   evidence further supported the ALJ's determination that plaintiff's impairments were not as

25   limiting as she alleged.

26        Plaintiff argues that the ALJ "failed to meaningfully evaluate the effect of [plaintiff]'s

27   tinnitus on her ability to function" and "failed to realize that [plaintiff's] hearing aids worsened

28   the tinnitus."  (ECF No. 13-1 at 12-13.)  However, the ALJ expressly addressed a tinnitus

1  questionnaire plaintiff submitted in support of her claims regarding this alleged impairment and,

2  as discussed above, determined that plaintiff's statements were less than credible.  AT 18.

3  Moreover, as defendant highlights, none of plaintiff's medical records indicate that plaintiff was

4  ever diagnosed with tinnitus.  Plaintiff's subjective complaints as to this impairment without

5  further evidentiary support from the objective medical evidence are insufficient to establish its

6  existence.  See 20 C.F.R. § 404.1508; Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005)

7  (quoting SSR 96-4p) ("[R]egardless of how many symptoms an individual alleges, or how

8  genuine the individual's complaints may appear to be, the existence of a medically determinable

9  physical or mental impairment cannot be established in the absence of objective medical

10  abnormalities; i.e., medical signs and laboratory findings.").  Furthermore, the medical evidence

11  in the record regarding plaintiff's hearing functions indicates that plaintiff's hearing function was

12  actually improved by the use of hearing aids, and at least one of her physicians recommended that

13  she be more consistent in their use.  AT 242, 246.

14       In sum, the ALJ provided multiple clear and convincing reasons for diminishing plaintiff's

15  subjective complaint testimony, all of which were supported by substantial evidence from the

16  record.  Accordingly, the ALJ did not err in making his credibility determination with regard to

17  plaintiff's testimony.[5]

18              3.    *The ALJ Properly Discounted the Testimony of Plaintiff's Father*

19       Finally, plaintiff argues that the ALJ improperly discounted the testimony of plaintiff's

20  father.  "[C]ompetent lay witness testimony cannot be disregarded without comment" and "in

---

[5] Plaintiff appears to briefly argue that the ALJ erred in his consideration of plaintiff's mental impairments because he "completely rejected Dr. Kalman's opinion," which corroborated plaintiff's testimony as to the extent of those limitations.  ECF No. 13-1 at 13.  However, the ALJ provided multiple reasons for rejecting Dr. Kalman's opinion, AT 19, and plaintiff does not provide any argument as to why this determination was erroneous.  To the extent that plaintiff argues that the ALJ somehow improperly considered Dr. Kalman's opinion, it is too undeveloped for the court's consideration because plaintiff does not explain why the ALJ's reasons for rejecting this opinion were improperly supported by the record.  See Hibbs v. Dep't of Human Res., 273 F.3d 844, 873 (9th Cir. 2001) aff'd sub nom. Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003) (declining to address party's argument on appeal because it was "too undeveloped to be capable of assessment"); Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court will "review only issues with are argued specifically and distinctly"); International Union of Bricklayers and Allied Craftsmen, etc. v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir. 1985); Kopczynski v. The Jacqueline, 742 F.2d 555, 560 (9th Cir. 1984) (claims of error on appeal "must be specific").

order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted).  Here, the ALJ summarized plaintiff's father's third-party statement testimony in detail, clearly indicating that he considered the information.  (AT 18.)  Moreover, plaintiff's father's testimony essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to this third-party testimony.  Accordingly, the ALJ did not err in considering the testimony of plaintiff's father.

V.     <u>CONCLUSION</u>

    For the foregoing reasons, IT IS HEREBY ORDERED that:

    1.  Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.

    2.  The Commissioner's cross-motion for summary judgment (ECF No. 14) is GRANTED.

    3.  Judgment is entered for the Commissioner.

    4.  The Clerk of Court is directed to close this case and vacate all dates.

    IT IS SO ORDERED.

Dated:  August 20, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE